UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL WALKER,

                Plaintiff,                  **MEMORANDUM & ORDER**
                                                                       24-CV-330 (PKC) (TAM)
  -against-

CITY OF NEW YORK,

                Defendant.
-------------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

      Plaintiff Michael Walker ("Plaintiff"), currently incarcerated at Eastern New York Correctional Facility, filed this *pro se* action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendant City of New York (the "City") concerning the City's failure to house him in a correctional facility in New York City near the courthouse during his three-day civil trial in a different case. (*See generally* Compl., Dkt. 1.) By Memorandum & Order dated February 15, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* and dismissed his original Complaint with leave to amend. (*See* Mem. & Order, Dkt. 8, at 1, 5–6.) On March 5, 2024, Plaintiff filed an Amended Complaint.[1] (*See* Am. Compl., Dkt 9.) For the reasons stated below, Plaintiff's Amended Complaint is dismissed, and this matter is terminated.

---

[1] Plaintiff's Amended Complaint, dated March 4, 2024, was received and docketed on ECF by the Pro Se Office of this District on March 7, 2024 and March 12, 2024, respectively. (*See* Am. Compl., Dkt. 9, at ECF 1.) On March 11, 2024, the Pro Se Office received a letter from Plaintiff attaching an older version of his Amended Complaint with a signature date on February 27, 2024. (*See* Dkt. 10, at ECF 1, 13.) In the cover page of Plaintiff's March 4, 2024 Amended Complaint, Plaintiff specifically asked the Court to "disregard [his] first [version of the Amended Complaint] [a]nd [h]onor this one enclosed with this notice[.]" (*See* Am. Compl., Dkt. 9, at ECF 1.) Therefore, the Court construes Plaintiff's March 4, 2024 Amended Complaint as the operative Amended Complaint. Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

**BACKGROUND**

Plaintiff filed a civil rights action against several New York City Police Officers alleging that they used excessive force during his arrest on January 8, 2017. *See Walker v. Raja, et al.*, No. 17-CV-5202 (PKC) (TAM) (the "*Raja* action").[2] In that action, the Court held a three-day trial and on August 25, 2022, the jury returned a verdict in favor of the defendants. *Id.* Dkt. 229. By filing the instant action, Plaintiff alleges that the City failed to house him in a city detention facility during the trial in the *Raja* action.[3]

In his original Complaint, Plaintiff alleged that the long commute of over two hours back and forth to the courthouse each day of the trial caused him "undue hardship" because he was "force[d] to sit sideways in a non[-]disable van," while "shackled hand and feet." (Compl., Dkt. 1, at ECF 5–9.) Plaintiff also alleged he was denied hot meals because of his late return to the facility during the trial. (*Id.* at ECF 9.) Construing Plaintiff's original Complaint liberally, the

---

[2] As reflected in the *Raja* docket, throughout that case, the Court consistently sought to ensure and maximize Plaintiff's ability to pursue his civil action. *See, e.g.*, *Raja* action, No. 17-CV-5202, Dkt. 144 (directing defense counsel to "provide or re-produce copies of documentary evidence to Plaintiff"); *id.*, 8/12/2020 Docket Entry (providing Plaintiff with chart summarizing the Court's *in limine* rulings); *id.*, 2/10/2021 Docket Order (directing defense to provide Plaintiff copies of Defendants' disciplinary histories); *id.*, Dkt. 209 (providing Plaintiff with a manual on self-representation published by U.S. District Court for the Southern District of New York); *id.*, 6/22/2022 Docket Order (directing defense to advise on the status of their subpoena of Plaintiff's mental health records, which Plaintiff had requested); Dkts. 220, 225 (defense counsel's attempt, at Court's request, to determine whether the psychiatrist who saw Plaintiff was available to testify at trial). This included multiple requests by the Court, via writs of habeas corpus—which Corporation Counsel assisted with—for Plaintiff to be transported from upstate New York facility where he was incarcerated to a facility closer to New York City and to be housed there during the trial. *See id.*, Dkts. 212, 214, 216, 218, 219, 221. It was reported to the Court that Plaintiff could not be housed at New York City Department of Correction's Rikers Island facility during the trial because there was no suitable unit given his visual impairments.

[3] Plaintiff also raised this claim in his motion for a new trial in the *Raja* action. *See Raja* action, Dkt. 238, at 6. This Court found that Plaintiff was not unfairly prejudiced by the length of the commute during the trial or that this circumstance warranted a new trial. *Id.* Dkt. 253, at 10–11.

2

Court found that Plaintiff failed to state a claim against the City. (*See* Mem. & Order, Dkt. 8, at 5.) Specifically, the Court held that the City, as a municipality, could only be held liable if there was a municipal policy or custom that caused the deprivation of his constitutional rights. (*See id.* at 2–3 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). In addition, the Court found that Plaintiff failed to state a claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act,[4] and declined to exercise supplemental jurisdiction over his state law claims. (*See id.* at 3–5.)

In his Amended Complaint, Plaintiff again asserts municipal liability, ADA, and Rehabilitation Act claims against the City for its failure to house him during the *Raja* action trial "within [a] (SDU) Sensorial[ly] Disability Unit within [the City's] detention centers [in] close proximity [to the] federal court [.]" (Am. Compl., Dkt. 9, at ECF 11.) Due to this failure, Plaintiff alleges that he was forced to endure long commute of two and a half hours each day each way to and from the courthouse in "a non[-]para[transit] van" and was denied hot meals and adequate rest, which "resulted in his inability to obtain sharp focus during trial[.]" (*See id.* at ECF 12.)

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held

---

[4] Plaintiff alleges that he is legally blind. (*See* Compl., Dkt. 1, at ECF 1; Am. Compl., Dkt. 9, at ECF 2.)

"to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Under 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

## DISCUSSION

For the reasons stated below, the Court finds that Plaintiff's Amended Complaint does not cure the deficiencies in his original Complaint and accordingly does not provide a basis for this action to proceed against the City.

### A. Municipal Liability Under *Monell*

In his Amended Complaint, Plaintiffs alleges that "[the City is liable] due to discriminatory [a]cts performed under [the] ADA [and the] Rehabilitation Act [] upon exercising policies/customs/rules/regulations." (Am. Compl., Dkt. 9, at ECF 11 (alternations added); *see also id.* at ECF 12.) As explained in this Court's February 15, 2024 Memorandum & Order, a municipality can be held liable if the plaintiff can show that a municipal policy or custom caused the deprivation of his constitutional rights. (*See* Mem. & Order, Dkt. 8, at 2); *Monell*, 436 U.S. at 690–91. As relevant here, "a formally adopted municipal policy," "a practice so persistent and widespread that it constitutes a custom or usage," or "a failure by official policy-makers to properly

4

train or supervise subordinates to such an extent that it amounts to deliberate indifference," may give rise to a Section 1983 claim against a municipality. *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018); *Safran v. Singas*, No. 20-CV-4537 (PKC) (SMG), 2020 WL 7125232, at *4 (E.D.N.Y. Dec. 4, 2020) (citation omitted). In the Second Circuit, an underlying constitutional violation is "a prerequisite to municipal liability under *Monell*." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Again, Plaintiff's Amended Complaint fails to allege a plausible *Monell* claim against the City. Plaintiff has not alleged any fact to show that any alleged violation of his constitutional rights, i.e., the City's failure to house him in a city detention facility during the *Raja* action trial, was the result of a "municipal policy or practice," as required when attempting to hold a municipality liable under Section 1983. *See D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (summary order) (citing *Monell*, 436 U.S. at 658). Without these facts, there is no basis for a *Monell* claim against the City. In addition, the City's failure to house him in a city detention facility during his trial—an isolated incident—"by non-policymaking municipal employees [is] generally not sufficient to demonstrate a municipal custom, policy or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Therefore, Plaintiff's municipal liability claim against the City is dismissed. *See, e.g.*, *Overhoff v. Ginsburg Dev., L.L.C.*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing Section 1983 complaint against

5

municipality due to plaintiff's failure to "allege that her constitutional rights were violated pursuant to any municipal policy or custom").

### B. ADA and the Rehabilitation Act

In his Amended Complaint, Plaintiffs asserts claims for money damages and injunctive relief under Title II of the ADA and Section 504 of the Rehabilitation Act against the City. (*See* Am. Compl., Dkt. 9, at ECF 11–16.) As explained in this Court's February 15, 2024 Memorandum & Order, generally the same analytical standards apply to alleged violations of Title II of the ADA and Section 504 of the Rehabilitation Act. *Harris*, 572 F.3d at 73. The Court thus analyzes Plaintiff's claims with reference only to the ADA, but the same analysis applies for Plaintiff's claim under the Rehabilitation Act.

To state a claim under the ADA, Plaintiff must demonstrate that "(1) he is a qualified individual with a disability; (2) [the City] is subject to [the statute]; and (3) he was denied the opportunity to participate in or benefit from the [City's] services, programs, or activities, or was otherwise discriminated against by the [City] because of his disability." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). The purpose of Title II of the ADA is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (citing, *inter alia*, *Se. Comm. College v. Davis*, 442 U.S. 397, 410 (1979)). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

In addition, "it is well[-]settled that monetary damages are [] available under Title II of the ADA [only] where the Plaintiff is able to demonstrate intentional discrimination." *Frank v.*

6

*Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (collecting cases), *aff'd*, 633 F. App'x 14 (2d Cir. 2016) (summary order). "Intentional discrimination does not require personal animosity or ill will[,]" *Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) (Kahn, J.), and "[a] plaintiff may recover under Title II [of the ADA] or Section 504 [of the Rehabilitation Act] upon a showing of a statutory violation resulting from deliberate indifference to the rights secured the disabled by the acts[,]" *id.* "While claims for damages under Title II require proof of discriminatory animus, claims for injunctive relief demand no such showing." *Davis v. Shah*, 821 F.3d 231, 260 n.19 (2d Cir. 2016) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001)).

Here, Plaintiff again fails to allege facts sufficient to show that the City violated his rights under the ADA and the Rehabilitation Act because of his visual disability. As to the first factor, here Plaintiff alleges that he is legally blind. (*See* Am. Compl., Dkt. 9, at ECF 2.) Thus, he has plausibly alleged that he is a qualified individual because his visual disability "substantially limits one or more of [his] major life activities." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994). As to the second factor, the City is subject to the ADA. *See Disabled in Action v. City of New York*, 437 F. Supp. 3d 298, 307 (S.D.N.Y. 2020) (finding that the City of New York is subject to the ADA). However, Plaintiff has failed to satisfy the last factor. Plaintiff's Amended Complaint mentions, and the alleged facts suggest, that his ADA claim is based on intentional discrimination and a failure to make a reasonable accommodation on the part of the City. (*See* Am. Compl., Dkt. 9, at ECF 3, 4, 11.) With respect to his ADA claim on the basis of intentional discrimination, Plaintiff does not plead facts sufficient to infer intentional discrimination on the part of the City. Plaintiff merely asserts that the City "[i]ntentionally disrupted [his] meaningful [a]cess to mandated programs, services or activit[i]es, [and] subjected [him] to discrimination" by

7

failing to house him "within [a] (SDU) Sensorial[ly] Disability Unit within [its] detention centers [in] close proximity [to the] federal court [.]" (Am. Compl., Dkt. 9, at ECF 11.) Such conclusory allegation fails to plausibly show that the City excluded him from or denied him the benefits of any services, programs, or activities because of his disability. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim]."). Nor does Plaintiff show that he was entitled under the ADA or the Constitution to be housed in an "SDU" by the City so that he could pursue his civil action in federal court.

In addition, Plaintiff's ADA claim on the basis of reasonable accommodation fails. "A 'reasonable accommodation' is one that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" *Thompson v. N.Y. State Corrs. & Cmty. Supervision*, No. 22-CV-6307 (FPG), 2022 WL 4562318, at *10 (W.D.N.Y. Sept. 29, 2022) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004)). For an accommodation to be reasonable, it "must overcome structural impediments and non-trivial temporal delays that limit access to programs, services, and activities." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016). "An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Id.* Here, Plaintiff does not allege facts sufficient to plausibly show that the City's failure to house him in a correctional facility in New York City was so inadequate that it deterred him from accessing the services otherwise available to him. Moreover, "[a]lthough a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the

accommodation of his choice." *McElwee*, 700 F.3d at 641.  As such, Plaintiff's claims under the ADA and the Rehabilitation Act are dismissed.

### C. State Law Claims

In his Amended Complaint, Plaintiff also asserts state claims of negligence and breach of fiduciary duties.  (*See* Am. Compl., Dkt. 9, at ECF 9–11.)  "[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." *Schaefer v. Town Victor*, 457 F.3d 188, 210 (2d Cir. 2006).  "Generally, 'if federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Butterfield v. Wade Tours, Inc.*, No. 10-CV-379 (LEK) (RFT), 2011 WL 4442939, at *1 (N.D.N.Y. Sept. 22, 2011).  Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice to bringing those claims in state court.

### CONCLUSION

Accordingly, the action, filed *in forma pauperis*, is dismissed for failure to state a claim. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).  Leave to further amend the complaint is denied.  *See McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sept. 15, 2022) ("A district court generally should not dismiss a *pro se* complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'" (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).  The Clerk of Court is respectfully directed to enter judgment and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal of this Memorandum & Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 18, 2024
      Brooklyn, New York